IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**GERUKA PRICE**                                                                                    **PLAINTIFF**

**V.**                                         **NO. 4:20-CV-16-DMB-RP**

**TUNICA COUNTY SCHOOL DISTRICT,**
**SUPERINTENDENT MARGIE PULLEY,**
**SHERWONDA DUNN, and TROSIKI**
**PETTES**                                                    **DEFENDANTS**

**ORDER**

Before the Court are Sherwonda Dunn and Trosiki Pettes' motion to dismiss Geruka Price's original complaint, Doc. #14; Tunica County School District and Margie Pulley's motion to dismiss Price's original complaint, Doc. #17; and the School District and Pulley's motion to dismiss Price's amended complaint, Doc. #28.

**I**
**Procedural History**

On January 29, 2020, Geruka Price filed a complaint in the United States District Court for the Northern District of Mississippi against Tunica County School District, Superintendent Margie Pulley, Sherwonda Dunn, and Trosiki Pettes,[1] alleging state and federal claims based on the non-renewal of her employment contract. Doc. #1. After United States Magistrate Judge Roy Percy ordered Price to show cause why her case should not be dismissed for failing to timely serve the defendants, Doc. #6, Price requested an extension to perfect service, Doc. #7. Judge Percy granted the motion and extended the "deadline for serving process … to May 18, 2020."[2] Doc. #8 at

---

[1] In subsequent filings by this defendant, the name is spelled "Pettis." *See, e.g.*, Doc. #14.

[2] Price requested a thirty-day extension based on the complaint's filing on January 29, 2020, and her "belief" that she had until February 28, 2020, to perfect service. Doc. #7 at 1. Judge Percy's order states that Price "had until April 18, 2020 to serve Defendants after filing the Complaint." Doc. #8 at PageID 40.

PageID 41. Dunn and Pettes were personally served on April 28, 2020. Doc. #9. The School District and Pulley were purportedly served through Stanley Ellis, the assistant superintendent of the School District,[3] on May 4, 2020. Docs. #12, #13.

On May 19, 2020, Dunn and Pettes filed a motion to dismiss the complaint for failure to state a claim. Doc. #14; *see* Doc. #15. One week later, the School District and Pulley moved to dismiss the complaint for failure to state a claim and for insufficient service of process. Doc. #17.

The next day, on May 27, 2020, Price filed a seven-count amended complaint against the same defendants. Doc. #19. Price purportedly served the School District and Pulley (through their attorney, Paul Watkins) that day. Docs. #24, #25. Six of the amended complaint's seven counts are asserted against the School District: "Count I: Wrongful Termination in Violation of Public Policy," "Count III: Retaliation in Violation of Title IX," "Count IV: Sex Discrimination in Violation of Title VII," "Count V: Retaliation in Violation of Title VII," "Count VI: Interference with Right to Reinstatement in Violation of the FMLA," and "Count VII: Retaliation in Violation of the FMLA." *Id.* at 8–13. Pulley, Pettes, and Dunn, in their individual capacities, are named only in "Count II: Intentional and Malicious Interference with Employment Contract."[4]

Price filed a response opposing Dunn and Pettes' motion to dismiss her original complaint on June 1, 2020. Doc. #20. On June 5, 2020, Price filed a response opposing the School District and Pulley's motion to dismiss her original complaint. Doc. #26.

On June 10, 2020, the School District and Pulley filed a motion to dismiss the amended complaint.[5] Doc. #28. Price responded in opposition to the motion. Doc. #30. The School District

---

[3] Doc. #28-2.

[4] *See* Doc. #19 at 1 ("Plaintiff brings her claim of intentional and malicious interference with employment against Defendants Superintendent Margie Pulley, Sherwonda Dunn, and Trosiki Pettes in their individual capacity. All other claims are brought against Tunica County School District.").

[5] Dunn and Pettes answered the amended complaint that day. Doc. #27.

and Pulley replied.  Doc. #36.

## II
## Motions to Dismiss Original Complaint

### A.  Dunn and Pettes' Motion

Dunn and Pettes argue that because "[n]one of Plaintiff's causes of action allow for individual liability … her claims against [them] must be dismissed."  Doc. #15 at 1.  Price responds that the filing of her amended complaint "adding a separate claim for malicious interference with employment" against the individual defendants moots Dunn and Pettes' motion to dismiss the original complaint.  Doc. #20.

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend a pleading to which a responsive pleading is required within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), … whichever is earlier."  Generally, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  Accordingly, the filing of an amended complaint will ordinarily moot a pending motion to dismiss unless the amended complaint "on its face" fails to address the alleged defects identified in the motion to dismiss.  *See McIntyre v. City of Rochester*, 228 F. Supp. 3d 241, 241–42 (W.D.N.Y. 2017) (motion to dismiss moot where "[a]t least on its face, the amended complaint appears to address those alleged defects" identified by the motion to dismiss).

Price filed her amended complaint eight days after Dunn and Pettes filed their motion to dismiss.  *See* Docs. #14, #19.  The amended complaint specifically addresses Dunn and Pettes' argument that they are not individually liable by adding a claim for "intentional and malicious interference with employment contract" against Dunn and Pettes (and Pulley).  Doc. #19 at 9–10.  A school principal and superintendent "might conceivably be held liable for tortious interference with contract in performing their official duties if their conduct was sufficiently malicious."

3

*Samsel v. Desoto Cnty. Sch. Dist.*, 242 F. Supp. 3d 496, 531 (N.D. Miss. 2017); *see Papagolos v. Lafayette Cnty. Sch. Dist.*, 972 F. Supp. 2d 912, 933 (N.D. Miss. 2013) ("The law is … clear that when a plaintiff alleges a state employee acted with malice, the plaintiff is alleging that the state employee acted outside the scope of his employment, and the state employee is therefore subject to personal liability."). Because this is the only claim asserted against Dunn and Pettes in the amended complaint, Dunn and Pettes' motion to dismiss Price's original complaint is moot and will be denied as such.

### B. The School District and Pulley's Motion

The School District and Pulley's motion to dismiss the original complaint raises a similar argument that "Price's claims do not allow for individual liability against Defendant Pulley." Doc. #17. As explained above, the filing of the amended complaint, which includes a malicious interference claim against Pulley, renders this argument moot.

The School District and Pulley also argue that the claims against them should be dismissed for improper service. Doc. #18 at 2–4. After Price filed the amended complaint, the School District and Pulley filed a subsequent motion to dismiss which presents the same arguments regarding Price's first attempt at service and adds additional arguments related to Price's second attempt at service. Docs. #28, #29. Because the amended complaint supersedes the original complaint, and because the School District and Pulley's subsequent motion supersedes their first motion to the extent it includes the same arguments as their first motion, their first motion to dismiss will be denied as moot.

### III
### Motion to Dismiss Amended Complaint

The School District and Pulley's motion to dismiss the amended complaint argues that the claims against Pulley should be dismissed because Price failed to properly serve Pulley and that

4

the claims against the School District should be dismissed because service on the School District was untimely. Doc. #29 at 1, 3.

### A. Service on Pulley

Pulley argues service was ineffective because she "was not personally served, she did not receive a copy of the summons and Complaint at her place of abode, and neither Dr. Ellis nor [Pulley's] counsel was designated as her agent for service of process." Doc. #29 at 3. Price's response does not address the attempt to serve Pulley through Ellis but argues that Watkins agreed to accept service and "had actual and/or apparent authority to accept service on [Pulley's] behalf." Doc. #30 at 2. Pulley replies that service through Watkins was untimely and that Watkins never agreed to accept service. Doc. #36 at 2.

"'When service of process is challenged, the serving party bears the burden of proving its validity or good cause' for failing properly to effect service." *Shabazz v. City of Houston*, 515 F. App'x 263, 264 (5th Cir. 2013) (quoting *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1013 (5th Cir. 1990)). Under the Federal Rules of Civil Procedure, an individual may be served by (1) "delivering a copy of the summons and of the complaint to the individual personally;" (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process;" or (4) in accordance with state law. Fed. R. Civ. P. 4(e). The Mississippi Rules provide for similar methods of service on an individual.[6] *See* Miss. R. Civ. P. 4(d)(1).

There is no contention that Pulley was served personally or that the summons and

---

[6] The Mississippi Rules provide for service on the individual personally, or to an "agent authorized by appointment or by law to receive service of process;" or by leaving a copy at the usual place of abode. Miss. R. Civ. P. 4(d)(1).

complaint were left at her home with someone who lives there. The relevant question then is whether under federal law either Ellis or Watkins was "an agent authorized by appointment or by law to receive service of process" on Pulley's behalf, so as to satisfy Rule 4(e)(2)(C),[7] or whether Ellis or Watkins was so authorized under state law, so as to satisfy Rule 4(e)(1).

Price does not argue that Ellis or Watkins were authorized by law to receive service of process. Neither does Price contend that Ellis was authorized to accept service for Pulley. Rather, Price focuses on an alleged appointment of Watkins to accept service. In Watkins' declaration, he states that he was never authorized to accept service for Pulley and that he told Price's counsel, Ashley Satterfield, that he was not authorized to accept service. Doc. #28-3. However, Satterfield's declaration states that Watkins said "he could and would accept service on behalf of both" the School District and Pulley. Doc. #37 at PageID #171.

For service under Rule 4(e)(2)(C ), "the agency relationship, if one exists, must be for the specific purpose of receiving service of process." *Ill. Cent. Gulf R.R. Co. v. Hampton*, 117 F.R.D. 588, 591 (S.D. Miss. 1987). Under federal law, "[t]he existence of an attorney-client relationship does not, in itself, convey authority to accept service." *Brown v. Bridges*, No. 12-CV-4947, 2015 WL 11121011, at *2 (N.D. Tex. Jan. 30, 2015) (internal quotation marks omitted). This is true even if the attorney is the defendant's attorney of record in the relevant litigation. *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002). Accordingly, "service of process is not effectual on an attorney solely by reason of his capacity as attorney." *Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971)). Thus, Watkins' position as Pulley's attorney does not in itself give him authority to accept service on Pulley's behalf.

---

[7] *See Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) (applying "well-settled general principles of the law of agency" to Rule 4(e)(2)(C) inquiry).

As for Price's argument that Watkins had apparent authority to accept service based on Watkins' alleged statement that he "could and would accept service," federal law requires some action by Pulley indicating that Watkins had authority to accept service. *See Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) ("Apparent authority is created as to a third person by *conduct of the principal* which … causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him.") (emphasis added). Because there was no such action by Pulley, Price cannot show that Watkins had apparent authority to accept service. Accordingly, she cannot show that service was completed under Rule 4(e)(2)(C).

Turning to state law, "[a]n agent may have either express authority to receive process on behalf of the defendant, or may enjoy apparent authority." *Spurgeon v. Egger*, 989 So. 2d 901, 904 (Miss. Ct. App. 2007). As with federal law, an attorney-client relationship is insufficient, standing alone, to establish express authority to receive process. *See N. Am. Tr. Co. v. Lanier*, 28 So. 804, 806 (1900) ("He was their counsel in Vicksburg to examine records and pass on titles, but it nowhere appears that he was ever authorized to accept service of process for them in any case."). Also like federal law, apparent authority under Mississippi law requires an action on the part of the alleged principal. *Marion Cnty. Economic Dev. Dist. v. Wellstone Apparel, LLC*, No. 2:13-CV-44, 2013 WL 3328690, at *5 (S.D. Miss. July 2, 2013) ("There are three elements of apparent authority: '(1) *acts or conduct of the principal*; (2) reliance thereon by a third person; and (3) a change of position by the third person to his detriment.'") (emphasis added) (quoting *Nelson v. Baptist Mem. Hosp.*, 70 So. 3d 190, 195 (Miss. 2011)). Price fails to point to any action by Pulley indicating Watkins had such authority. Because Price has not established that Ellis or Watkins was authorized to accept service on Pulley's behalf, she has not shown valid service of

process on Pulley.

### B. Service on the School District

In Mississippi, school districts are political subdivisions. Miss. Code Ann. § 37-6-5. Accordingly, the Federal Rules of Civil Procedure allow service on a school district through its chief executive officer or in accordance with state law. Fed. R. Civ. P. 4(j). Mississippi law allows for service "by delivering a copy of the summons and complaint to the person, officer, group or body responsible for the administration of that entity or by serving the appropriate legal officer, if any, representing the entity." Miss. R. Civ. P. 4(d)(8).

Price attempted to serve the School District on two separate occasions—once through Ellis and once through Watkins.

#### 1. Service on Ellis

The School District argues that service on Ellis was ineffective because he is not the chief executive officer, he was not authorized to accept service, and he does not have apparent authority to accept service because he "has never before done so." Doc. #29 at 3–5. Price argues that Ellis, as the assistant superintendent, had apparent authority to accept service because an "organizational chart on [the School District's] website suggests that the Interim Superintendent, Attorney, Secretary and Assistant Superintendent make up the body responsible for the administration," and because Ellis responded to an e-mail indicating he would accept "legal documents" for the School District. Doc. #26[8] at 3–4.

The School District cites *Anderson v. Pascagoula School District*, 218 So. 3d 296, 300 (Miss. Ct. App. 2017), to support its argument that service on a school district employee does not

---

[8] In response to the second motion to dismiss, Price did not present any new arguments with respect to service on the School District but incorporated the arguments filed in response to the School District and Pulley's first motion to dismiss. Doc. #30 at 1.

8

establish proper service. Doc. #29 at 4. In *Anderson*, a woman walked into a school district's central office, handed a brown envelope to the receptionist, and told her that the envelope was intended for the superintendent. 218 So. 3d at 297. The Mississippi Court of Appeals affirmed the lower court's dismissal for improper service, focusing on the receptionist's testimony that she was not authorized to accept service of process on the school district's behalf, that she had never before accepted service, that the process server never asked to speak to someone with authority to accept service, and that the process server never stated her intention to serve process on the school district. *Id.* at 301.

Similar to *Anderson*, Ellis' declaration states that he was not authorized to accept service on the School District's behalf and has never done so in the past. Doc. #28-2. He further indicates that based on an e-mail from Price's counsel, he agreed to be at the School District office to accept unidentified "legal documents" for the School District and Pulley but that neither Price's counsel nor the process server asked if he was authorized to accept service. *Id.* Although Ellis holds an administrative position as the assistant superintendent, it is unclear whether this position qualifies him as an "officer" or member of the "group or body responsible for the administration" of the School District in accordance with Mississippi Rule of Civil Procedure 4. Accordingly, Price has not established that Ellis was an appropriate agent to accept service on behalf of the School District.

## 2. *Service on Watkins*

The School District does not contend that Watkins, as the attorney representing it in this case, was not authorized to accept service under the Mississippi Rules. *See* Doc. #29. Rather, the School District argues that service was untimely because Price failed to serve it "in the time allowed by the Court's April 28 Order." Doc. #29 at 5; Doc. #36 at 2. Price contends that service

9

was timely "[b]ecause the thirty-day extension [to complete service] was based on [an] incorrect original deadline," and she had until May 28, rather than May 18, to complete service.[9] Doc. #26 at 2. The School District replies that the April 28 order "clearly provided that [Price's] extended deadline for service of process was May 18, 2020 [and] Plaintiff did not attempt to serve counsel until May 27, 2020. Doc. #36 at 2.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Price filed her original complaint on January 29, 2020, which means she had until April 28, 2020, to complete service under Rule 4. In granting Price's request for an extension, the April 28 order set a specific deadline of May 18, 2020. Doc. #8 at 2. The May 18 fixed date to complete service controls. *See* Fed. R. Civ. P. 6(a) advisory committee's note to 2009 amendment ("The time-computation provisions of subdivision (a) apply only when a time period must be computed. They do not apply when a fixed time to act is set."). Since service through Watkins was not attempted until May 27, 2020—after the May 18 deadline—such service was untimely.

### C. Equitable Considerations

Price argues in her response that dismissal is unwarranted because "the applicable statute of limitation would prohibit Plaintiff from pursuing her Title VII claim and there is no clear record of delay or contumacious conduct." Doc. #26 at 5. The defendants do not address this argument.

Under the Federal Rules, a district court has "discretionary power to extend the time for

---

[9] Though she now argues the April 28 order was based on an incorrect original deadline, Price never raised the matter in any motion to amend the deadline set by the order.

service," even without a showing of good cause by the plaintiff. *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008). "A discretionary extension may be warranted … if the applicable statute of limitations would bar the refiled action …." *Id.* When, based on the statute of limitations, dismissal would amount to dismissal with prejudice, "it is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." *Thrasher v. City of Amarillo*, 709 F.3d 509, 513 (5th Cir. 2013) (internal quotation marks omitted) (quoting *Millan*, 546 F.3d at 326). Additionally, at least one of three aggravating factors should be present to support dismissal with prejudice: "(1) delay caused by the plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." *Id.* at 514 (cleaned up).

Based on the record, the Court concludes that Price's two attempts to serve Pulley and the School District through Ellis and Watkins do not amount to "contumacious conduct." *Millan*, 546 F.3d at 326–27 ("This Court has recognized that delay which warrants dismissal with prejudice must be longer than just a few months; instead the delay must be characterized by significant periods of total inactivity.") (internal quotation marks omitted). Further, there is no evidence that the delay was caused by Price rather than her attorney, that the School District or Pulley will suffer prejudice, or that the delay was caused by intentional conduct. Due to the possibility that dismissal of Price's complaint, even if without prejudice, may affect her ability to subsequently pursue viable claims, the Court concludes that an additional extension to complete service is warranted. Accordingly, Price's deadline to serve the School District will be extended so as to render service on the School District through Watkins timely.[10] Price will be granted a final, brief extension to

---

[10] Had Price successfully sought to amend the April 28 order to reflect an extension until May 28, 2020, an additional extension would not be necessary to timely effectuate service.

11

complete service on Pulley.[11]

### III
### Conclusion

For the reasons explained above:

1. Dunn and Pettes' motion to dismiss the original complaint [14] is **DENIED as moot**.

2. The School District and Pulley's motion to dismiss the original complaint [17] is **DENIED as moot**.

3. The School District and Pulley's motion to dismiss the amended complaint [28] is **DENIED**. Price's deadline to serve the School District is extended so as to make timely Price's service of the School District through Watkins. No later than fourteen (14) days after the entry of this order, Price must serve Pulley in accordance with the Federal Rules. If Price fails to do so, her claims against Pulley will be dismissed without further notice.

**SO ORDERED**, this 3rd day of December, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[11] Price's amended complaint clarifies that only tortious interference claims are brought against the individual defendants in their individual capacity. Doc. #19. However, as the applicable statute of limitations may still affect Price's ability to pursue this claim against Pulley, the Court finds that an extension is still warranted.